**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **PATRICIA DAWSON** | | **PLAINTIFF** |
| **vs** | **NO. 4:14cv00583 SWW** | |
| **H & H ELECTRIC, INC.** | | **DEFENDANT** |

_____

**DEFENDANT'S MEMORANDUM BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**
_____

## I.  INTRODUCTION

Plaintiff asserts a claim for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII"), based on her sex. **[doc. entry 1 ¶ 2].**  Specifically, plaintiff alleges that she was terminated from her employment with defendant because defendant "perceived Plaintiff to be a man who did not conform to gender stereotypes associated with men in our society or because it perceived Plaintiff to be a woman who did not conform to gender stereotypes associated with women in our society" **[doc. entry 1 ¶ 37].**

Defendant denies that plaintiff's termination was discriminatory on the basis of her sex, and affirmatively states that it is entitled to judgment as a matter of law on any claim asserted in this lawsuit.

### A.  Background Facts

Plaintiff began working for defendant in 2008 in the job classification of electrical apprentice and continued in that same job classification for the entire time she was employed by defendant**;** at the time of her hire and for some time subsequent to beginning work for defendant,

she used and went by the name Steven Dawson.  On or about June 2, 2012, plaintiff was assigned to work at the site of a customer of defendant, Remington Arms Co., in Lonoke, Arkansas. **[Statement of Material Facts Not In Issue, nos. 1-4].**

Late in the afternoon on Thursday, June 21, 2012, plaintiff advised Marcus Holloway, Vice-President of defendant and her immediate supervisor at the Remington Arms Co. site, that she had changed her name.  She showed Holloway an Arkansas driver's license containing the name Patricia Yvette Dawson.  Following her brief discussion about her gender status and her need to have her payroll checks issued in her new name so that she could deposit or cash them when presenting her new driver's license as a form of picture ID, Holloway informed plaintiff that he was on his way out of town and would be back to work the following Monday.  He advised her that he would contact defendant's home office in Hot Springs about her request so that whatever steps their payroll department needed to take regarding her request could be set-in-motion, but that pending his return on Monday and further communication with her, everything else concerning her work should continue as it had been.  **[Statement of Material Facts Not In Issue, nos. 5, 11]** .

The following Monday morning, June 25th, plaintiff was advised by defendant's office manager, Michelle Overton, that the company needed additional information from her regarding the request to change her payroll records, and on Wednesday, June 27th, plaintiff went to defendant's home office, provided defendant with updated documentation reflecting her name change, and signed new personnel department documents reflecting her name change. **[Statement of Material Facts Not In Issue, no. 12].**

On September 17, 2012, plaintiff made various statements concerning suing Remington in regard to the daily sign-in sheets Remington required to be signed to gain access to its plant

and which provided a record of daily hours worked; plaintiff made similar statements about suing Remington in regard to the safety training she had received when she had first begun to work at that site in June—some three months earlier.  The basis for her statements was that although she had changed her name to Patricia, Remington's own sign-in sheets continued to reflect her name as Steven and the safety training she had received from Remington was under her former name and had not been re-offered to her under her new name.  These statements were overheard by at least one other employee of defendant who also was working at that site at the time as well as by other employees of Remington.  The other H&H employee, whose name was Stefan Wood, went to Holloway and advised him about plaintiff's statements.  **[Statement of Material Facts Not In Issue, no. 13]**; apparently, however, her statements had quickly become a matter of open discussion among various Remington employees at the site, and had inevitably come to the attention of Remington management, including Danny Hopkins, maintenance manager at Remington, and Brett Stovall, project manager at Remington **[Statement of Material Facts Not In Issue, no. 14].** After attending a meeting with Remington management concerning what was perceived by everyone involved to be litigation threats against Remington, Holloway sought-out plaintiff to inquire about what he had been told she had said.  During that discussion, plaintiff admitted having made the statements Holloway inquired about and acknowledged that she had used a poor choice of language.[1]  Plaintiff was then advised by Holloway that, under the circumstances, there was no place for her to work at that Remington site; there was no other available work at that time at any other site to which she could be re-assigned; and she was terminated **[Statement of Material Facts Not In Issue, nos. 15-18].**

## II. LAW AND ARGUMENT

---

[1] In her Complaint (doc. entry 1) at paragraph 32, plaintiff admitted that Holloway asked her that day whether she had threatened to sue Remington.

## A.  Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  *Kalda v. Sioux Valley Physician, Inc.* 481 F.3d 639, 643 (8th Cir. 2007).  In order to avoid summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  *Barnhardt v. Open Harvest CoOp.,* 742 F.3d 365, 369 (8th Cir. 2014).  To avoid an adverse summary judgment ruling, plaintiff cannot rest on her pleadings or unsupported allegations.  She must provide "specific facts showing a genuine issue of material fact for trial" and submit admissible evidence sufficient to permit a reasonable jury to return a verdict in her favor.  *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  Moreover, "[i]f the evidence is merely colorable, or it is not significantly probative, summary judgment may be granted."  *Id.* at 249-50. Conclusory or speculative testimony cannot defeat a motion for summary judgment.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888-89 (1990). There is no "discrimination case exception" to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial. *Torgerson v. City of Rochester,* 643 F. 3d 1031, 1043 (8th Cir. 2011), citing *Fercello v. County of Ramsey,* 612 F. 3d 1069, 1077 (8th Cir. 2010).

## B.  Sex Discrimination

### 1. Sexual Orientation

As an initial matter, transsexuals may not claim protection under Title VII from discrimination based solely on their status as a transsexual; as has been repeatedly recognized by federal courts, Title VII does not provide a basis for protected status because sexual orientation is

not listed as a protected class under Title VII, 42 U.S.C. § 2000e-2(a)(1).  *See, e.g., Sommers v. Budget Marketing, Inc.,* 667 F.2d 748, 750 (8th Cir. 1982) ("Although this circuit has not previously considered the issue raised on this appeal, we are in agreement with the district court that for the purposes of Title VII the plain meaning must be ascribed to the term "sex" in absence of clear congressional intent to do otherwise.")("Discrimination based on one's transsexualism does not fall within the protective purview of the Act.").   *Kiley v. Am. Soc. For Prevention of Cruelty to Animals,* 296 Fed. App'x 107, 109 (2d Cir. 2008) ("The law is well-settled in this circuit and in all others to have reached the question that [the plaintiff] has no cause of action under Title VII because Title VII does not prohibit harassment or discrimination because of sexual orientation."). *Ulane v. Eastern Airlines, Inc.,* 742 F.2d 1081 (7th Cir. 1984) ("The phrase in Title VII prohibiting discrimination based on sex, in its plain meaning, implies that it is unlawful to discriminate against women because they are women and against men because they are men." "For us to now hold that title VII protects transsexuals would take us out of the realm of interpreting and reviewing and into the realm of legislating.  This we must not and will not do."). *Etsitty v. Utah Transit Authority,* 502 F.3d 1215 (10th Cir. 2007) ("This court agrees with *Ulane* and the vast majority of federal courts to have addressed this issue and concludes that discrimination against a transsexual is not discrimination because of sex under Title VII.").

## 2.  Sex-stereotyping

Because of the refusal of federal courts to extend Title VII sex protection in sexual orientation issues, legal challenges eventually took a new tact based upon the Supreme Court's decision in *Price Waterhouse v. Hopkins,* 490 U.S. 228 (S. Ct. 1989), a decision which was not based on transgender issues, but rather on sex-stereotyping issues. ("As for the legal relevance of sex stereotyping, we are beyond the day when an employer could evaluate employees by

assuming or insisting that they matched the stereotype associated with their group, for [i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.").  *Price Waterhouse* did not change the nearly universal rulings that transgender status alone was not enough to trigger Title VII protection, but did result in claimants being able to avoid having their transgender claims dismissed  outright by including allegations that sexual stereotyping was the reason for adverse action—just as this plaintiff has done. Obviously, however, simply making the allegation in an attempt to state a claim upon which relief can be granted will not carry the day.  A plaintiff must ultimately prove that a claim actually arose from the employee's appearance or conduct <u>and</u> the employer's stereotypical perception*s*.  *See, e.g. Creed v. Family Express Corporation,* 2007 WL 2265630 (N.D. Indiana 2007)("To establish a discrimination claim based on sex stereotyping, the plaintiff must demonstrate that a particular action can be attributed to gender stereotypes" citing *Doe by Doe v. City of Belleville, Ill,* 119 F.3d 563, 581( 7th Cir. 1997)).  In this lawsuit, plaintiff has no evidence concerning any stereotypical perceptions of Marcus Holloway, the Vice-President of defendant who terminated her, and her claim here fails for that reason alone. Although it is undisputed that Holloway told plaintiff that she could not wear large, hoop earrings while working on her first day at the Remington site, that was a safety-issue requirement of Remington imposed on all employees who worked on the plant floor around machinery. **[Statement of Material Facts Not In Issue, nos. 7-8].** It is also undisputed that Holloway advised plaintiff that he had been told by Remington employee Paul Burns that she had worn a low-cut blouse while working one day in Holloway's absence, and that she needed to dress in appropriate work attire[2].  **[Statement of**

---

[2] Plaintiff herself acknowledged in her deposition that the blouse in question had been "a little low cut".  Deposition of Patricia Dawson, **Exhibit 3,** pg. 179-180.

**Material Facts Not In Issue, nos. 9-10].** But those instances do not rise to the level of showing any stereotypical perceptions on the part of Mr. Holloway; they are, in fact, legitimate concerns and common-sense requirements imposed in an industrial manufacturing work setting.

### 3. *Prima-Facie* Proof

Since plaintiff has alleged no direct evidence that defendant discriminated against her on the basis of her sex, the circumstantial evidence framework set forth in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792 (1973) applies.  If plaintiff establishes a *prima facie* case, the burden shifts to defendant to articulate one or more legitimate, non-discriminatory reasons for the employment decision.[3]  Should defendant carry this burden, plaintiff bears the burden of persuading the court by a preponderance of the evidence that each proffered reason is a pretext for illegal discrimination.  *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515 (1993).

To establish a *prima facie* case of sex discrimination, plaintiff must show that she (1) is a member of a protected group; (2) was subject to an adverse employment action; (3) was qualified for the position; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination. *Davenport v. Riverview Gardens Sch. Dist.,* 30 F3d 940. 944-45 (8th Cir. 1994).  Here, just as plaintiff cannot establish any stereotypical perceptions in relation to her termination, she also cannot meet *Davenport's* fourth-prong proof requirement for a *prima facie* case of discrimination.  Although defendant has never disputed that plaintiff was qualified for the job of electrical apprentice and that she was terminated, plaintiff has no other evidence of any circumstances giving rise to an inference of discrimination.  For example, plaintiff has no evidence that any similarly situated employees were treated better or differently than she was treated. Indeed, plaintiff cannot show that there were any similarly situated employees to begin

---

[3] This is a burden of production, not of persuasion; therefore, defendant does not have to persuade the court that it was actually motivated by the reason advanced. *McDonnell Douglas,* 411 U.S. at 802.

with, let alone that there was any disparate treatment.  To be similarly situated, plaintiff must establish that "[t]he individuals used as comparators 'must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances'". *Gilmore v. AT &T,* 319 F.3d 1042 (8th Cir. 2003). Citing *Gilmore,* the court in *Rodgers v. U.S. Bank, N.A,* 417 F.3d 845 (8th Cir. 2005), while acknowledging the conflicting lines of cases in the Circuit on the topic, stated "at the prima facie stage of the *McDonnel Douglas* burden shifting framework, we choose to follow the low-threshold standard for determining whether employees are similarly situated." *Id* at 852.  Even under this low-threshold standard, however, a plaintiff must still show that she and any comparator were "involved in or accused of the same or similar conduct and [were] disciplined in different ways." *Id* at 852.  Plaintiff has no such proof because (1) no other employee of H&H had ever threatened to sue an H&H customer; and (2) every employee of defendant, regardless of who that employee's supervisor was, or what their job function or title was, or what employment policy was violated, has been terminated from defendant's employment for their employment policy violations. **[Statement of Material Facts Not In Issue, no. 19].**

### 4. Pretext

Even assuming for the sake of argument only, however, that plaintiff could establish a *prima facie* case so that the burden of production would shift to defendant to show that it had a legitimate, nondiscriminatory reason for terminating plaintiff, "the burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Id* at 853, citing *Floyd v. State of Missouri Dept. of Soc. Servs., Div. of Family Servs.,* 188 F.3d 932, 936 (8th Cir. 1999). Defendant has articulated a clear and nondiscriminatory reason for having fired plaintiff:  She was believed to have threatened to sue a

customer of defendant and did so without having made any legitimate effort to rectify any reasonable concern she had in this regard, the very purpose of the employment policy she failed to follow. [4]

At the pretext stage of the *McDonnell Douglas* burden shifting framework, "the test for determining whether employees are similarly situated to a plaintiff is a <u>rigorous</u> one." *Id at 853.* (emphasis added).  Plaintiff  "must show that she and the employees outside of her protected group were similarly situated in all relevant respects". "To be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of 'comparable seriousness'".  *Id at 853-54.  See also, Bone v. G4S Youth Services, LLC*, 686 F.3d 948 (8th Cir. 2012) ("[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct, without any mitigating or distinguishing circumstances." citing *Clark v. Runyon,* 218 F.3d 915, 918 (8th Cir. 2000)). Plaintiff has no evidence that any other employee of defendant fit the articulated parameters to be considered "similarly situated", or has ever been more leniently disciplined than she was. She cannot meet her pretext burden.  She was terminated because she was believed to have threatened to sue defendant's customer.  In that regard, Holloway had been advised of her statements from two different sources; her statements had been openly discussed in the workplace on the day she was terminated; her statements had become known by Remington management personnel; and plaintiff had been asked about the matter by Holloway immediately prior to her termination.

"There are at least two ways a plaintiff may demonstrate a material question of fact regarding

---

[4] Defendant's employment policy is contained in its Employee Handbook, and states: "*Under normal working conditions, employees wo have a job-related problem, question or complaint should first discuss it with their immediate supervisor.  At this level, employees usually reach the simplest, quickest, and most satisfactory solution. If the employee and supervisor are unable to solve the issue, the supervisor will contact the General Superintendent. If at this level, the problem is still not resolved, the General Superintendent will contact the General Manager.*" **[Exh. 1 ¶ 13].**

pretext.  A plaintiff may show that the employer's explanation is 'unworthy of credence…because it has no basis in fact.'   Alternatively, a plaintiff may show pretext 'by persuading the court that a [prohibited] reason more likely motivated the employer.'  Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action".  *Torgerson v. City of Rochester,* 643 F. 3d 1031, 1048 (8th Cir. 2011), citing *Wallace v. DTG Operations, Inc.,* 442 F. 3d 1112 (8th Cir. 2006).

 Here, plaintiff can offer no evidence that Holloway was not advised by outside sources that she had threatened to sue Remington or that his impression was otherwise.  *See, e.g., Barber v. C1 Truck Driver Training, LLC,* 656 F.3d 782, 794 (8th Cir. 2011) (citing  *Edmund v. MidAmerican Energy Co.,* 299 F.3d 679. 685-86 (8th Cir. 2002) and *Fercello v. Cnty. Of Ramsey,* 612 F. 3d 1069, 1082 ("[E]ven if [the employer's] overall assessment of [the employee] was incorrect, this does not entitle [the employee] to a judgment on the pretext issue, particularly because there is no evidence that [the employer's] assessment of [the employee] was not honest.")).  *See also Cronquist v. City of Minneapolis,* 237 F. 3d 920, 928 (8th Cir. 2001) ("Employers are free to make employment decisions based upon mistaken evaluations, personal conflicts between employees, or even unsound business practices.  Federal courts do not sit as 'super personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.' ''). "[T]he relevant inquiry is not whether [the defendant's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs."  *Etsitty v. Utah Transit Authority,* 502 F.3d 1215, 1226 (10th Cir. 2007).

## **CONCLUSION**

Plaintiff cannot make a *prima-facie* case of discrimination; even if she could, she cannot

show that the proffered reason for her termination was pretext by defendant.  This lawsuit should

be dismissed with prejudice, and the costs of this defense be awarded to defendant.


H&H Electric, Inc.


By: /s/ William P. Dougherty
William P. Dougherty  AR Bar # 73028
Attorney at Law
3115 Kavanaugh Blvd.
Little Rock, AR   72205
501-366-2125
Bill_2008@comcast.net

## CERTIFICATE OF SERVICE

I certify that on June 5, 2015 the foregoing was filed using the court's CM/ECF filing
system which sent notice to all persons registered herein.

/s/ William P. Dougherty