IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| PATRICIA Y. DAWSON       * | |
|         Plaintiff       * | |
| * | |
| V.       * | |
| * | NO: 4:14CV00583 SWW |
| H&H ELECTRIC, INC.       * | |
|         Defendant       * | |

## OPINION and ORDER

Plaintiff Patricia Dawson ("Dawson"), a transgender woman, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, against her former employer, H&H Electric, Inc. ("H&H"). Dawson charges that H&H wrongfully terminated her employment because of her sex. Before the Court is H&H's motion for summary judgment [ECF Nos. 16, 17, 18], Dawson's response in opposition [ECF Nos. 19, 20, 21], and H&H's reply [ECF No. 25]. Also before the Court is an *amicus curiae* brief by the Equal Employment Opportunity Commission [ECF No. 26].[1] After careful consideration, and for reasons that follow, the motion is denied.

### I. Summary Judgment Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 371, 322 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving

---

[1] The Commission takes the position that discrimination against an individual because he or she is transgender is cognizable as discrimination because of sex in violation of Title VII.

party is entitled to judgment as a matter of law. *Celotex*, 477 at 322-23. A factual dispute is genuine if the evidence could cause a reasonable jury to enter a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Celotex*, 477 U.S. at 331.

## II. Background

Dawson has been diagnosed with gender dysphoria, which she explains "is the medical diagnosis given to individuals whose gender identity–their innate sense of being male of female–differs from the sex they were assigned at birth and who experience distress as a result."[2] In 2008, when Dawson was known as Steven and presented as a male, H&H hired her to work as an electrical apprentice. H&H provided electrical contract work for Remington Arms Company ("Remington"), and Dawson was assigned to work at Remington's plant in Lonoke, Arkansas. Dawson worked at the Lonoke job site from June 2012 until her termination in September 2012, and during that time period, Marcus Holloway ("Holloway"), H&H's vice president, served as

---

[2]Dawson Dec., ¶7 [ECF No. 19-1, at 3]. Regarding the terms "gender dysphoria," "transgender," and "transsexual," the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (Fifth ed. 2013)("DSM–5") provides as follows:

> *Gender dysphoria* as a general descriptive term refers to an individual's affective/cognitive discontent with the assigned gender but is more specifically defined when used as a diagnostic category. *Transgender* refers to the broad spectrum of individuals who transiently or persistently identify with a gender different from their natal gender. *Transsexual* denotes an individual who seeks, or has undergone, a social transition from male to female or female to male, which in many, but not all, cases also involves a somatic transition by cross-sex hormone treatment and genital surgery *(sex reassignment surgery)*.

DSM-V at 451.

her direct supervisor.

As part of her therapy for gender dysphoria, Dawson began the process of transitioning from male to female, and in June 2012, she changed her legal name to Patricia Yvette Dawson. Initially, Dawson refrained from discussing her transition with anyone at work, and she continued to use the name Steve.  But on Friday, June 22, 2012, Dawson informed Holloway that she was transgender, and she showed him her new driver's license, which bore her new name and a female gender designation.

The parties present entirely different accounts of events that followed Dawson's disclosure to Holloway.  Dawson testifies that when she told Holloway about her transgender status, he appeared stunned and stated: "You're one of the best people I have.  I'd hate to lose you."[3]  She also recalls that Holloway instructed her not to tell anyone else at work about her gender transition, and he stated that he needed the weekend to think about what to do.[4]  Contrary to Dawson's recollection, Holloway remembers only that he and Dawson had a brief discussion about her name change and the need to have her payroll information changed.[5]  According to Holloway, he merely told Dawson that he was on his way out of town and that the following Monday, he would notify payroll about her name change.[6]

Dawson testifies that on Monday, June 25, 2012, Holloway instructed her to complete new employment forms with her legal name, but he repeated that she should not discuss her

---

[3]Dawson Dec., ¶11 [ECF No. 19-1, at 3]; *see also* Dawson Dep., 118 [ECF No. 19-2, at 16].

[4]Dawson Dec., ¶11 [ECF No. 19-1, at 3].

[5]Holloway Dec., ¶9 [ECF No. 16-1, at 2].

[6]*Id*.

gender transition with anyone at work, and he denied her request to openly use her legal name, wear women's clothing, or use the women's restroom at work.[7]  Remington's policies required H&H employees to complete safety training, which was documented, and to sign daily log books upon entering the plant.  Dawson asked Holloway if she could use her legal name to sign Remington's safety training documents and log books, but Holloway refused her request.[8]

Dawson reports that she obeyed Holloway's orders and refrained from discussing her gender transition at work, but her coworkers began discussing her name change and transgender status when she was not present.  Dawson recalls that one coworker told her that he knew about her name change and asked which name he should use to address her.   Dawson testifies that she repeatedly sought Holloway's permission to use her legal name at work and explained to him that, despite her silence, other employees were aware of her gender transition.  According to Dawson, Holloway denied each request and cautioned her: "We are guests here [at Remington's job site].  Let's not rock the boat."[9]

Beginning the week of September 7, 2012, Dawson defied Holloway's orders and began to wear a bra, women's clothing, and makeup to work.  Subsequently, Holloway told Dawson that he had received a report that she had worn a blouse to work, and he ordered her not to do it again.[10]  Dawson testifies that when Holloway reprimanded her for inappropriate attire, he asked

---

[7]Dawson Dec., ¶12 [ECF No. 19-1, at 2-3].

[8]Dawson Dec., ¶ 16 [ECF No. 19-1, at 4].

[9]Dawson Dec., ¶13 [ECF No. 19-1, at 4]; *see also* Dawson Dep., 126-127 [ECF No. 19-2, at 22-23].

[10]Holloway Dep., 21 [ECF No. 19-3, at 17].  In deposition, Holloway stated that Dawson's blouse presented a safety issue. *See* Holloway Dep., 19-19 [ECF No. 19-2, at 14-15].  Holloway acknowledges that he didn't see the blouse in question, but he recalls receiving a

her whether she was trying to drive him into early retirement, and he complained that people were constantly approaching him to talk about her.[11] Holloway denies making those statements.[12]

On September 17, 2012, Dawson trained an H&H employee named Stephan Wood. Dawson recalls that Wood asked her whether she was permitted to sign Remington's safety records and log books with her legal name. Dawson states that when she responded that she was required to sign the name "Steven," Woods inquired whether the circumstances raised falsification of documents, safety, or liability issues, to which Dawson responded, "I would think so." [13] Later that afternoon, Holloway terminated Dawson's employment. Dawson testifies that Holloway approached her and said, "I'm sorry, Steve. You do excellent work, but you're too much of a distraction. I'm going to have to let you go. I cannot afford to risk this contract over one person."[14]

After exhausting her administrative remedies, Dawson commenced this lawsuit, claiming that H&H terminated her employment because of her sex, in violation of Title VII. Specifically, Dawson charges that H&H terminated her employment "because of her gender transition" and "because it perceived [her] to be a man who did not conform to gender stereotypes associated

---

report that it was low cut. *See id*. When asked to specify the safety concern presented by a low-cut blouse, Holloway responded: "Your safety." *Id*.

[11] Dawson Dec., ¶21 [ECF No. 19-1, at 5].

[12] Holloway Dep. 66 [ECF No. 19-3, at 28].

[13] Dawson Dec., ¶22 [ECF No. 19-1, at 6; *see also* Dawson Dep., 131-132 [ECF No. 19-2, at 26-27].

[14] Dawson Dec., ¶ 23 [ECF No. 19-1, at 6].

with men . . . or because it perceived [her] to be a woman who did not conform to gender stereotypes associated with women . . . ."[15]

### III. Discussion

In moving for summary judgment, H&H initially argues: "[T]ranssexuals may not claim protection under Title VII solely from discrimination based solely on their status as a transsexual; as has been repeatedly recognized by federal courts, Title VII does not provide a basis for protected status because sexual orientation is not listed as a protected class under Title VII . . . ."[16]  This argument ignores Dawson's asserted theory of discrimination--that she was terminated because of her gender transition and her failure to conform to gender stereotypes.

It is well settled that Title VII's interdiction of discrimination "because of [an] individual's sex," 42 U.S.C. § 2000e-2(a)(1), prohibits an employer from taking adverse action because an employee's behavior or appearance fails to conform to gender stereotypes. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S.Ct. 1775 (1989), *superseded on other grounds by statute as stated in Burrage v. United States,* 134 S. Ct. 881, 889 n.4 (2014);[17] *see also Lewis*

---

[15]Compl., ¶ 36-37 [ECF No. 1, at 6].

[16]Def.'s Br. Supp. Summ. J. [ECF No. 18], 4-5.

[17]In *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775 (1989), the plaintiff adduced evidence that she was denied a partnership at Price Waterhouse because she did not conform to the decision makers' expectations of how a woman should behave and appear.  The decision makers called the plaintiff "macho," commented that she needed "a course at charm school," and advised her that she should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Price Waterhouse*, 490 U.S. at 235, 109 S.Ct. at 1782.  A plurality of the Court found that such comments were indicative of gender discrimination and held that Title VII's prohibition of discrimination because of sex encompasses discrimination based on a failure to act in conformity with gender stereotypes. *See id.,* 490 U.S. at 250–51, 109 S.Ct. 1775 (plurality opinion); *id*. at 258–61, 109 S.Ct. 1775 (White, J., concurring); *id*. at 272–73, 109 S.Ct. 1775 (O'Connor, J., concurring). The Court noted: "As for the legal relevance of sex stereotyping, we are beyond the day when an

*v. Heartland Inns of America, L.L.C.*, 591 F.3d 1033, 1039 (8th Cir. 2010)(noting that "an adverse employment decision based on gender non-conforming behavior and appearance is impermissible under *Price Waterhouse*"). The Court finds that Dawson pleads facts sufficient to state a legally viable claim that H&H discriminated against her because of her sex in violation of Title VII.

      H&H next argues that there are no genuine issues for trial because Dawson is unable to establish a *prima facie* case of sex discrimination, and she cannot show pretext. Consistent with the parties' arguments, the Court will analyze Dawson's claim under the three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). Under that framework, Dawson must establish a *prima facie* case by showing that (1) she is a member of a protected class; (2) she met the legitimate expectations of her employer; (3) she suffered adverse employment action (termination); and (4) the adverse employment action (termination) occurred under circumstances giving rise to an inference of discrimination. *See Wheeler v. Aventis Pharms.*, 360 F.3d 853, 857 (8th Cir. 2004). If Dawson makes a *prima facie* showing, the burden shifts to H&H to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Then, the burden shifts back to Dawson to present evidence that the stated reason for adverse action is pretext for discrimination. *Id*.

      With respect to Dawson's *prima facie* showing, H&H does not dispute that she met the legitimate expectations of her employer[18] or that she suffered adverse employment action. H&H

---

employer could evaluate employees by assuming or insisting that they matched the stereotypes associated with their group . . . . " *Id*. at 251, 109 S.Ct. 1775.

      [18]It is undisputed that prior to Dawson's termination, she had received merit-based pay raises.

contends only that Dawson is without evidence sufficient to establish an inference of sex discrimination because she cannot show that she received less favorable treatment than similarly-situated employees, who are not members of her protected class.  However, such comparative evidence is not the exclusive means by which Dawson may establish an inference of discrimination.  *Lewis v. Heartland Inns of America, L.L.C.,* 591 F.3d 1033, 1039 -1040 (8th Cir. 2010).  "The touchstone inquiry remains whether *circumstances* permit a reasonable inference of discrimination."  *Id.*(emphasis added).  Here, Dawson presents evidence that when she told Holloway about her transgender status, he stated: "You're one of the best people I have. I'd hate to lose you."  Dawson also offers evidence that Holloway instructed her not to "rock the boat" and that he repeatedly forbade her to use her legal name, talk about her transgender status, or wear feminine clothes at work.  Dawson's evidence further shows that soon after she disobeyed Holloway's orders and began wearing makeup and feminine attire at work, Holloway terminated her employment and told her that she was too much of a distraction.  The Court finds that Dawson has provided ample evidence from which a reasonable juror could find that she was terminated because of her sex.

The Court now turns to the issue of pretext.  H&H's proffered reason for terminating Dawson is that she threatened to sue Remington and did so without first discussing her work-related problem with her immediate supervisor, as required by H&H's employment handbook.  Holloway testifies that on September 17, 2012, the day he terminated Dawson, Remington employees Virgil Bennett and Danny Hopkins ("Hopkins") beckoned him to a meeting.[19]  According to Holloway, Hopkins told him that he called the meeting because a Remington

---

[19]Holloway Dep., 5-6  [ECF 19-3, at 21-28].

employee overheard Dawson state that she could sue Remington because she had not received safety training under her legal name. Holloway further testifies that Hopkins stated: "We don't appreciate one of your employees making a comment about Remington and where we work. We feel like you need to remove her from our job site due to, you know, the threat that she made."[20]

Dawson presents evidence that casts serious doubt on Holloway's testimony. In deposition, Hopkins recalled that he talked to Holloway only once regarding Dawson and that the topic of discussion was that Dawson's hoop earrings presented a safety concern. Hopkins denied that he told Holloway that Dawson had threatened to sue Remington or that Hopkins suggested that Holloway should remove Dawson from Remington's job site.[21]   Considering this evidence, together with Holloway's alleged comments evidencing a discriminatory attitude and the close temporal proximity between Dawson's feminine appearance at work and Holloway's decision to terminate her employment, the Court finds that Dawson has carried her burden to show that H&H's proffered reason is merely pretext for sex discrimination. *See Erickson v. Farmland Indus., Inc*., 271 F.3d 718, 727 (8th Cir. 2001)(explaining that evidence of a discriminatory attitude may serve as evidence of pretext); *Fitzgerald v. Action, Inc*., 521 F.3d 867, 876 (8th Cir. 2008)(noting that temporal proximity may affect the reasonableness of inferences drawn from other evidence).

## IV. Conclusion

For the reasons stated, Defendant's motion for summary judgment [ECF No. 16] is DENIED, and the case will proceed to a jury trial.

---

[20]Holloway Dep., 26 [ECF 19-3, at 72].

[21]Hopkins Dep., 33-36 [ECF 19-11, at 5-7].

IT IS SO ORDERED THIS 15TH DAY OF SEPTEMBER, 2015.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE